IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA L. KEATING, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:13-CV-487 |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 16). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Rhonda Keating's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. PROCEDURAL HISTORY & PERSONAL BACKGROUND

Plaintiff Rhonda Keating ("Plaintiff" or "Keating") filed an application for Disability Insurance benefits on May 22, 2007. (Tr. 178). Keating alleged she became disabled on July 1, 1999 due to suffering from fibromyalgia, osteoarthritis, and diabetes. (Tr. 203). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 88, 93).

At Keating's request (Tr. 101), administrative law judge ("ALJ") Timothy Keller convened an administrative hearing on November 25, 2009 to evaluate her application. (Tr. 46-

1

68).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*).  A vocational

expert ("VE"), Bruce Browig, also appeared and testified. (*Id.*).  On February 9, 2010, the ALJ

issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 75-80).  After applying

the five-step sequential analysis,[1] the ALJ determined Keating retained the ability to perform

work existing in significant numbers in the national economy. (*Id*.).  Subsequently, Plaintiff

requested review of the ALJ's decision from the Appeals Council. (Tr. 124-31). The Appeals

Council granted the request for review and remanded Plaintiff's claim back to the ALJ for

further evaluation. (Tr. 85-86).

     The ALJ convened a second administrative hearing on September 15, 2011 to evaluate

Keating's application. (Tr. 33-45. Represented by counsel, Plaintiff again testified before the

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990); Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001).

ALJ. (*Id*).  A VE was present at the hearing, but did not provide testimony. (*Id.*).  On October 5, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled within the meaning of the Act. (Tr. 20-28).  The Appeals Council denied Plaintiff's request for review of the ALJ's second decision, making the ALJ's October 5, 2011 determination the final decision of the Commissioner. (Tr. 15-16, 1-3).  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

Keating was born on February 22, 1953, and was 58 years old on the date the ALJ rendered his decision. (Tr. 69).  Accordingly, she was considered as a "person closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. § 404.1563(d).  Plaintiff attended one year of college and has past relevant work as a customer service representative, housekeeper, and office clerk.  (Tr. 64, 207).

## II.  MEDICAL EVIDENCE

### A.  Medical evidence developed before Plaintiff's first hearing

Although Plaintiff alleges disability as of 1999, the earliest medical evidence in the record that is relevant to Plaintiff's appeal appears to be from 2004. (Tr. 307-10).  Punjab Singh, M.D., served as Keating's primary care physician until he retired in December 2003, at which time his son, Parmidner Singh, M.D., began providing treatment for Keating. (Tr. 208).  In September of 2004, Dr. Singh diagnosed Keating with bronchitis, diabetes, hypertension, and hypercholesteremia. (Tr. 308).  During December 2004, Dr. Singh diagnosed osteoarthritis of the right elbow, but Plaintiff's physical examination appeared normal, and Plaintiff stated that she was "in a good state of health." (Tr. 307).

On March 3, 2005, Plaintiff reported that she was in a good state of health. (Tr. 306).  Her physical examination showed no significant findings and her motor sensory exam revealed

no defects. (*Id.*). Still, Dr. Singh diagnosed osteoarthritis in both legs and advised Keating to increase exercise. (*Id.*).

In June and July of 2005, Plaintiff complained of generalized muscle pain and soreness, fatigue, and pain all over from her "face to feet." (Tr. 304-05). Dr. Singh noted Plaintiff had a history of fibromyalgia and recommended that Plaintiff see a rheumatologist. (Tr. 304). He diagnosed muscle plain. (Tr. 305).

On January 5, 2006, Plaintiff did not complain of pain. (Tr. 302). It appears that throughout 2006, Dr. Singh did not record developments regarding Keating's fibromyalgia. (Tr. 299, 301-02, 311-12). His diagnoses were osteoarthritis, diarrhea, diabetes, hypercholesterolemia, and hypertension. (Tr. 299, 301-02, 311-12). Though Dr. Singh opined that Plaintiff suffered from osteoarthritis, her physical examinations around this time revealed overall normal results. (*Id.*). In July and October of 2006, Plaintiff reported that her health was well. (Tr. 299, 311).

During January 2007, Keating reported to Dr. Singh that her fibromyalgia was preventing her from performing daily activities, and she experienced severe pain, which had worsened. (Tr. 298). Plaintiff had a normal physical examination. (*Id.*). Dr. Singh diagnosed fibromyalgia, osteoarthritis, and oral thrush. He recommended that Plaintiff apply for disability. (*Id.*).

In August 2007, Gary Hinzman, M.D., a state agency consultative physician, conducted a review of the medical evidence of record. (Tr. 313-20). He opined that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently, she could stand or walk for about six hours in an eight hour day, she could sit for a total of six hours in an eight hour workday, and she was unlimited in her ability to push and pull. (Tr. 314). Dr. Hinzman recommended that Plaintiff only occasionally climb ramps or stairs and never use ladders, ropes, or scaffolds. (Tr. 315).

In May 2007, Plaintiff reported muscle pain to Dr. Singh, but stated that it had decreased after she discontinued her use of Lipitor. (Tr. 296). Upon conducting a review of Plaintiff's systems, Dr. Singh noted all over joint pain at a level ranging from "four out of ten" to "ten out of ten." (*Id.*). During August and December of 2007, Plaintiff reported doing and feeling well, without complaints of pain. (Tr. 323, 346).

On October 31, 2007, Willa Caldwell, M.D., conducted an independent review of Plaintiff's medical records and affirmed Dr. Hinzman's prior residual functional capacity ("RFC") assessment. (Tr. 340).

In January 2008, Plaintiff reported "some neck pain and fibromyalgia" to Dr. Singh. (Tr. 345). A physical examination showed no joint pain or range of motion abnormality. (*Id.*). The doctor prescribed Ultracet and requested an x-ray of the cervical spine, which showed only mild discogenic disease between C5 to C7. (Tr. 349). Plaintiff continued to see Dr. Singh for routine checkups during 2008. (Tr. 342-44, 425). Plaintiff stated she was feeling well, did not complain of joint pain, and her physical examinations did not result in notable findings. (Tr. 343-44, 425). Through the course of these treatments, it does not seem that Dr. Singh made notations regarding fibromyalgia. Plaintiff's date last insured for DIB benefits purposes was September 30, 2008. (Tr. 21).[2]

On November 18, 2008, Dr. Singh completed a physical capacity evaluation. (Tr. 351-52). Dr. Singh opined that Plaintiff was capable of the following work-related activities: (1) standing for less than one hour in an eight hour workday, (2) walking for less than one hour, (3)

---

[2] To obtain DIB benefits, a claimant must prove that the "onset of disability" was prior to the expiration of his insured status and that disability lasted for a continuous period of twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is "disabled," the ALJ generally only considers evidence from the alleged disability onset date through the date last insured. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). Nonetheless, an ALJ may consider evidence that relates back to a claimant's prior condition, even though obtained after the date last insured. *See id.*

sitting for up to four hours, (4) occasionally lifting and carrying less than ten pounds, and (5) frequently lifting and carrying less than ten pounds. (Tr. 351). He stated that Plaintiff would be unable to use her hands for pushing and pulling. (Tr. 352). However, the doctor opined that Keating could use her hands for simple grasping and handling, fine manipulation and fingering, and her feet for repetitive movements. Dr. Singh found that Plaintiff could occasionally bend and climb stairs. (*Id.*).

On January 21, 2009, state agency consulting examiner Jerry McCloud, M.D., conducted a third review of Plaintiff's medical evidence. (Tr. 356). He opined that despite additional medical evidence, Plaintiff's RFC was unchanged. (*Id.*).

During three visits with Dr. Singh in 2009, Plaintiff did not complain of musculoskeletal or joint pain. (Tr. 424, 460, 478). Physical examinations showed no notable results. (*Id.*). On November 25, 2009, Plaintiff appeared before the ALJ for her first administrative hearing regarding her application for benefits. (Tr. 46).

**B. Medical evidence developed after Plaintiff's first hearing**

In December 2009, Dr. Singh noted Plaintiff's history of fibromyalgia. (Tr. 478). On March 17, 2010, Plaintiff stated she was doing well and did not complain of pain from fibromyalgia or other joint pain. (Tr. 477). Plaintiff's physical examination was normal. (*Id.*). In April 2010, Keating complained of fatigue and weakness, but denied pain. (Tr. 475). In May 2010, Dr. Singh wrote a note excusing Plaintiff from jury duty because she was unable to sit or stand for extended periods of time because of joint pain. (Tr. 485).

On August 2, 2010, Plaintiff did not complain of joint pain or weakness. (Tr. 472). However, on August 16, 2010, Plaintiff stated she was "having chronic pain from her fibromyalgia, and she has not been able to work." (Tr. 471). After a normal physical

examination, Dr. Singh assessed osteoarthritis, fibromyalgia, diabetes, hypertension, and hypercholesterolemia. (*Id.*).  He advised Plaintiff to consider applying for disability. (*Id.*).

X-rays were taken of Plaintiff's feet around March 2010. (Tr. 490).  The imaging suggested stress fractures involving the second to fourth metatarsal bones of the right foot and degenerative changes of the first metatarsal phalangeal joint space of the right foot. (*Id.*).  The left foot appeared normal, except for "bilateral small calcaneal spurs." (*Id.*).  In July 2011, Plaintiff complained of pain to Dr. Singh. (Tr. 469).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 1999 through her date last insured of September 30, 2008.

3. Through the date last insured, the claimant had the severe combination of impairments best described as (1) diabetes mellitus, (2) fibromyalgia, (3) arthritis, and (4) obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform a reduced range of "light" work as that term is defined in 20 C.F.R. 404.1567(b).  Specifically, the claimant retains the residual functional capacity to lift and carry ten pounds frequently and 20 pounds occasionally, and sit, stand, and walk for six hours each in an eight hour work day. The claimant can occasionally climb ramps and stairs, but she is precluded from climbing ladders, ropes, and scaffolding.  This residual functional capacity is consistent with the opinions of Dr. Hinzman, Dr. Caldwell, and Dr. McCloud.  It is also well-supported by the record as a whole.

6. Through the date last insured, the claimant was capable of performing past relevant work as a customer service representative.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 1999, the alleged onset date, through September 30, 2008, the date last insured.

(Tr. 23-28) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See* *Cunningham v. Apfel*, 12 Fed. App'x. 361, 362 (6th Cir. 2001); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See* *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court

would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff maintains that the ALJ erred in evaluating and weighing the medical opinion evidence of record and in assessing her credibility. Additionally, Keating posits that the ALJ failed to follow the mandates of the Appeals Council order upon remand and to provide a full and fair hearing after the Appeals Council's directive that the ALJ reconsider her application. For the reasons that follow, Plaintiff's arguments do not necessitate remand.

### A. Medical Source Evidence

#### 1. Treating physician

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544, *see* 20 C.F.R. § 404.1527(c)(2)-(5). The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. 20 C.F.R. § 404.1527(d). Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

Plaintiff asserts that the ALJ failed to give good reason for rejecting the opinions of Dr. Singh, her general physician. Plaintiff faults the ALJ in his rejection of Dr. Singh, because she alleges the ALJ failed to take into account that when a claimant suffers from fibromyalgia, a treating source's opinion must be evaluated under different standards.

This circuit has recognized that symptoms of fibromyalgia are often not supportable by objective medical evidence. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007); *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Courts have described the disease as one which is "elusive," but causing "severe musculoskeletal pain." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003). Fibromyalgia patients typically "manifest normal muscle strength and neurological reactions and have a full

range of motion." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861-62 (6th Cir. 2011) (*citing Preston*, 854 F.2d at 820).    In the absence of other objectively ascertainable manifestations, the process of diagnosing fibromyalgia includes (1) testing a series of focal points for tenderness, and (2) ruling out other possible conditions through objective medical and clinical trials. *Id.*; *Swain*, 297 F. Supp. 2d at 990.

  In *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-45 (6th Cir. 2007), the Sixth Circuit Court of Appeals addressed an ALJ's failure to credit various treating sources' opinions where the claimant suffered from fibromyalgia.  The court found it was error for the ALJ to reject the claimant's treating sources, which included a family practitioner and a rheumatologist, because their opinions did not have the support of objective evidence.  Among other evidence supporting the treating physicians, the court noted that the record was "replete with references to observed tender points in the 'classic fibromyalgia distribution.' " *Id.* at 244.  Additionally, two of the claimant's treating physicians "recorded ongoing complaints of intense pain and stiffness throughout Rogers' body, as well as fatigue." *Id.*  When rendering his decision, the ALJ ignored this evidence which supported the treating sources' findings about the limiting effects of the claimant's fibromyalgia.

  Before being entitled to controlling or substantial weight, a treating physician's opinion, even in a fibromyalgia case, must still pass a certain threshold of proof. *Cohen v. Comm'r of Soc. Sec.*, 1:12-CV-1351, 2013 WL 3421832, at *5 (N.D. Ohio July 8, 2013).  "The gold standard for these thresholds are the specialty of the treating physician (preferably a rheumatologist) and findings from tender point analysis." *Id.*  As this Court has explained,

> The threshold . . . is not a bright line.  These cases must be viewed on a continuum.  On one end of the continuum are those cases involving primary care physicians, not rheumatologists, who diagnose fibromyalgia and do no tender point analysis.  On the other end of the continuum are those cases such as *Rogers* .

> . . where a treating rheumatologist performs proper tender point analysis and gives an opinion imposing specific limitations caused by the fibromyalgia.

*Id.*  Generally, if a treating rheumatologist has conducted a proper analysis given the medical standards for fibromyalgia, his opinion should be afforded controlling or great weight.  *Id.*

The present case involves the only the opinion of Dr. Singh, who was a primary care physician.  Dr. Singh managed Plaintiff's medications over the relevant period, but does not appear to have specialized in the treatment of fibromyalgia.  Dr. Singh referred Plaintiff to a rheumatologist, and Plaintiff did not follow through with this referral.  Plaintiff does not point to evidence of trigger point testing the record.  While Dr. Singh was neither a specialist nor is there any evidence of trigger point testing, placing this case at the opposite end of the spectrum from cases like *Rogers*, the ALJ nonetheless recognized Keating's fibromyalgia as a severe impairment. (Tr. 23).  When formulating Plaintiff's RFC, the ALJ provided sufficient justification for assigning less than controlling weight to Dr. Singh's opinions. (Tr. 27). The ALJ discussed why he questioned Dr. Singh's significant functional limitations and set forth three reasons for devaluing the physician's opinion. (*Id.*).

In support of his treating source analysis, the ALJ observed that Dr. Singh's treatment records did not include "the type of significant clinical and laboratory abnormalities" that would be expected, given the serious limitations Dr. Singh assigned. (Tr. 27).  The ALJ further noted that the doctor did not explain this deficiency in his functionality report. (*Id.*).  This ground for discrediting Dr. Singh is reasonable.  Fibromyalgia may not be susceptible of objective verification through traditional means, but a doctor's records may reflect medically accepted and recognized signs of the disease. *See Rogers*, 486 F.3d at 243.  A reading of the ALJ's discussion of the medical evidence shows that the ALJ was aware of the nature of fibromyalgia and the acceptable medical practices surrounding it.  The ALJ noted that the "record is devoid of any

trigger point testing generally used to form the diagnosis of fibromyalgia." (Tr. 26).  The ALJ's acknowledgement of trigger point testing shows that his reference to "clinical and laboratory abnormalities" was not limited to traditional objective procedures that fibromyalgia evades, but encompassed the type of clinical and laboratory methods that would address the ailment.

Additionally, the ALJ acknowledged other types of clinical abnormalities that may surface in a claimant who suffers from fibromyalgia, like Keating.  Specifically, the ALJ noted Keating's lack of complaints of joint pain during physical examinations conducted by Dr. Singh. (Tr. 26).  Among the numerous times that Plaintiff treating with Dr. Singh from 2004 to 2010, Plaintiff's reports of joint pain were occasional and sporadic.  For example, Plaintiff complained of all-over pain in June and July of 2005 (Tr. 304-05); however, throughout 2006 Plaintiff does not appear to have indicated joint pain upon examination. (See, e.g., 299-302, 311-12).  In May 2007, Plaintiff voiced joint pain during physical examination (Tr. 296), but during August and December visits with Dr. Singh that year, Plaintiff did not indicate problems with joint pain. (Tr. 323, 346).  Following a complaint of "some neck pain and fibromyalgia" in January 2008, Plaintiff did not indicate joint pain during other routine checkups in 2008. (Tr. 345, 342-44, 425).

Furthermore, Plaintiff alleges disability from other impairments, including osteoarthritis, which can be assessed through traditional clinical and laboratory methods.  Evidence supporting limitations arising from such impairments was lacking, as the ALJ concluded.  For example, physical examinations failed to document objective findings indicative of osteoarthritis, such as a limited range of motion. (Tr. 26).  In regard to any potential limitation arising from Plaintiff's cervical spine, the ALJ noted that an x-ray showed only "mild" discogenic disease. (Tr. 26).

Next, the ALJ discredited Dr. Singh because the doctor uncritically relied on Plaintiff's subjective complaints. (Tr. 27).  The ALJ's credibility finding bolsters his rejection of Dr.

Singh's opinions.  Due to the nature of fibromyalgia, a patient's subjective complaints may serve as a primary means to assess the disease.  Nevertheless, an ALJ is not required to accept the limitations of a treating physician who relied heavily on a plaintiff's subjective complaints, when the reliability of those complaints is properly called into question.  *See, e.g., Hicks v. Comm'r of Soc. Sec.*, 2:09-CV-01001, 2011 WL 1114312, at *15 (S.D. Ohio Feb. 2, 2011) *report and recommendation adopted*, 2:09-CV-1001, 2011 WL 1124983 (S.D. Ohio Mar. 25, 2011) (*citing Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 2010 WL 5185848, at *2-5 (6th Cir. 2010)). The ALJ explained that there was good reason to question the accuracy of Plaintiff's subjective symptoms.  As will be discussed further herein, the ALJ provided reasonable grounds to doubt Plaintiff's credibility, and thus to question Dr. Singh's conclusions based on those complaints.

Finally, the ALJ gave less weight Dr. Singh's report because of the doctor's purported bias in favor of Keating.  The ALJ questioned whether Dr. Singh sympathized with Keating or provided an opinion favorable to a finding of disability in an effort to satisfy requests for assistance she may have made. (Tr. 27).  The ALJ stated that "[w]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the [treating source's] opinion in question departs substantially from the rest of the evidence of record, as in the current case." (*Id.*).

Plaintiff argues that this third reason was not satisfactory enough to comport with the treating source rule.  It is appropriate for ALJs to be mindful that opinions rendered from treating sources may be bias in an effort to help their patients receive disability benefits, *see Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001), but such bias will not exist in every case.  The purpose of the treating source rule is to encourage ALJs to engage in meaningful review of such doctors' opinions, given their special knowledge of the claimant and her ailments.  It is a close

14

call as to whether this reason is suitable grounds to discredit the treating source in this case. However, because the ALJ provided sufficient reasons to support his treating source analysis, any error that may arise from the ALJ's reliance on this reason to devalue Dr. Singh's opinion does not mandate remand.

Furthermore, even if the sum of the ALJ's reasons for discrediting Dr. Singh were insufficient, remand would be inappropriate in this case. The Sixth Circuit has found that if an ALJ does not expressly give good reasons for rejecting the opinion of a treating source, reversal and remand may not be required if the violation is *de minimis*. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (citing *Wilson*, 378 F.3d at 547). A *de minimis* violation occurs "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* (*quoting Wilson*, 378 F.3d at 547). An ALJ may meet the goal of the good reasons requirement if he indirectly attacks the supportability of the treating physician's opinions and the consistency of those opinions with the rest of the record evidence. *See Nelson v. Comm'r of Soc.*, 195 F. App'x 462, 470 (6th Cir. 2006) (per curiam). In *Nelson*, the court found that the ALJ's analysis of the record evidence contrary to the treating physicians' opinions adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency with the other record evidence. *Id.*

The ALJ's discussion of record evidence sufficiently attacks the supportability and consistency of Dr. Singh's opinions, and establishes that even with her diagnoses of fibromyalgia, osteoarthritis, diabetes, and other impairments, Plaintiff was not so limited as the doctor opined. As the Sixth Circuit has explained: "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits. . . . Some people may have a severe case

15

of fibromyalgia as to be totally disabled from working but most do not and the question is whether claimant is one of the minority." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir.  2008) (*citing Rogers*, 486 F.3d 234; *Preston*, 854 F.2d 815).

To begin, the ALJ accurately observed that Plaintiff generally described herself to Dr. Singh as feeling well. (Tr. 24, 307, 299, 311, 323, 346, 343).  Although Plaintiff argues that she consistently complained to Dr. Singh about her disabling fibromyalgia pain, the record does not support such a level of reports.  Fibromyalgia patients may have different magnitudes of symptoms over time. *Lawson v. Astrue*, 695 F. Supp. 2d 729, 737 (S.D. Ohio 2010).  Even so, the nature and frequency of Plaintiff's complaints regarding her fibromyalgia do not correlate with the level of limitations Dr. Singh recommended.  The Court previously noted the sporadic nature of Plaintiff's complaints over the years that she treated with Dr. Singh.

Additionally, the ALJ observed that Plaintiff's treatment in the form of medication management generally provided good control of her symptoms. (Tr. 26).  The ALJ noted a number of Plaintiff's prescription medications. (Tr. 24).  The record does not indicate that Plaintiff's medication failed to improve her symptoms, nor does it show any notable, sustained increase in her symptoms or purported limitations, which would suggest that her medication was ineffective.

Finally, the ALJ observed that Plaintiff underwent no specialized treatment for her impairments. (Tr. 26).  Given the serious limitations the doctor imposed, it is notable that Plaintiff saw no specialists, such as a rheumatologist for her fibromyalgia, or underwent treatment measures beyond medication for her osteoarthritis.  Accordingly, a review of the ALJ's opinion as a whole supports his decision not to grant controlling weight to Dr. Singh.

### 2.  State agency reviewing physicians

Plaintiff purports that it was incorrect for the ALJ to attribute greater weight to the opinions of the state agency reviewing physicians over those of her treating source.  In support of this argument, Keating quotes *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 766 (6th Cir. 2008) where the court explained that "the opinion of a non-examining physician . . . should be given relatively little weight 'if it is contrary to the opinion of the claimant's treating physician.' "  However, the facts of this case are distinguishable from *Germany-Johnson*.  In *Germany-Johnson*, the ALJ failed to address the opinion of the claimant's treating physician under the treating source rule, and the treating physician's opinion contradicted the state agency expert's conclusions. *Id.* at 776-77.  As a result, it was error to give greater weight to the opinion of a state agency physician without explaining why such deference was warranted over the treating source.  Here, the ALJ adequately stated why the treating physician's opinions were not entitled to controlling or substantial weight.

"State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(f)(2)(i)).  In the present case, the ALJ accepted the opinions of state agency reviewers Drs. Hinzman, Caldwell, and McCloud, on the ground that they were well-supported. (Tr. 26). The undersigned finds no reason to disturb this conclusion.  Because the ALJ reasonably discounted the opinion of Plaintiff's treating physician, his decision to attribute greater weight to the opinions of the state agency reviewing physicians was not in error.

**B. Plaintiff's credibility**

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses, and the ALJ's credibility determinations are entitled to considerable deference. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).* In evaluating whether a claimant is disabled by pain, this circuit has established a two part test. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 243, 243 (6th Cir. 2007).* The ALJ must consider (1) whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objectively established medical condition is of a level of severity that it can reasonably be expected to produce the claimant's alleged symptoms. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)*; *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).*

Pain alone, if caused by a medically determinable impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).* Difficulty may arise when evaluating whether objective medical evidence supports allegations of pain caused by fibromyalgia, because fibromyalgia patients generally "present no objectively alarming signs." *Rogers*, 486 F.3d at 243*; *Preston*, 854 F.2d at 820* (noting that objective tests are "of little aid or relevance" in determining the existence or severity of fibromyalgia).

When evaluating the credibility of a plaintiff's allegations of pain, the ALJ should consider a number of factors in addition to the objective medical evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)*; 20 C.F.R. § 404.1529(c)(2).* Particularly given the inherent absence of the lack of objective medical evidence in fibromyalgia cases, evaluation of factors other than objective medical evidence should be given significant attention. *See Caley v.*

18

*Astrue*, 5:11-CV-1146, 2012 WL 1970250, at *7 (N.D. Ohio June 1, 2012). These other factors may include: statements from the claimant and the claimant's treating and examining physicians; diagnoses; efforts to work; the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 20 C.F.R. §§ 404.1529(a), (c)(3); SSR 96-7p, 1996 WL 374186, at *3.

Plaintiff alleges that the ALJ failed to mention the factors provided by the regulations to assess her credibility. This argument is not well taken. The regulations do not mandate a discussion of all of the relevant credibility factors; an ALJ may satisfy his obligations by considering most, if not all, of the factors. *See Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam). Furthermore, Plaintiff does not cite to—and the Court is unaware of—any authority that would require the ALJ to set forth the list of relevant factors in his opinion or to discuss each of those factors in detail.

A review of the ALJ's decision reveals that the ALJ considered and evaluated most of the applicable factors. The ALJ discussed Plaintiff's allegations in detail before assessing her credibility. (Tr. 25). The ALJ recognized Plaintiff had been treated for osteoarthritis, fibromyalgia, diabetes, and hypertension. (Tr. 23). In the context of Plaintiff's allegations, the ALJ considered additional factors. For example, the ALJ observed that Plaintiff alleged "constant" pain in her right knee, both of her ankles, and in her left elbow; this pain and other symptoms affect her ability to climb stairs, walk, sleep, and perform even small tasks around her

home. (Tr. 25). The ALJ noted evidence that undermined Plaintiff's allegations regarding the extent to which she is limited by her impairments. Plaintiff underwent only conservative treatment in the form of medication management for her various ailments; Plaintiff's medication management provided good control of her symptoms; repeated physical examinations documented no pain in Plaintiff's joints; and Plaintiff did not undergo specialized treatment from medical providers other than her family physician. (Tr. 26). Thus, to the extent that Keating contends the ALJ failed to assess her credibility in light of the relevant factors, this assignment of error is not well taken.

Keating also contends that the ALJ's reasons for finding her not fully credible were inaccurate or unsupported by the record. However, each of Plaintiff's arguments lack merit as will be addressed individually as follows.

Plaintiff alleges the ALJ erred in attacking her credibility because she did not require specialized treatment and experienced good control of symptoms with medication management. Plaintiff attacks this rationale because it incorrectly discounts the subjective nature of fibromyalgia, fails to note Dr. Singh consistently treated her diabetes and osteoarthritis, and her diabetes was not in control as evidenced by Dr. Singh altering her prescriptions.

Contrary to Plaintiff's arguments, such reasons set forth by the ALJ were acceptable grounds for discounting her allegations of extreme limitations. Aside from treating with her family doctor, Keating did not undergo specialized treatment, such as consultations with a rheumatologist. Plaintiff may have treated consistently with Dr. Singh, her general physician, but one would have expected Plaintiff to pursue treatment with more specialized practitioners to help alleviate her symptoms had they limited her to the extent her testimony indicates. Dr. Singh referred Keating to a rheumatologist (Tr. 304), but Plaintiff did not follow through with the

20

referral.  Though Plaintiff maintains that her diabetes was not in control, she points to no medical evidence showing her diabetes limited or precluded her from working in the manner she alleges.

Keating also argues the ALJ incorrectly discounted her credibility on the ground that there is no evidence of joint pain on the record.  According to Plaintiff the record supports her constant treatment over many years for fibromyalgia and joint pain.  Plaintiff misconstrues the ALJ's opinion. The ALJ wrote that "repeated physical examinations of the claimant document that she had no pain in her joints." (Tr. 26).  The ALJ did not write that Plaintiff never complained of joint pain, which would have been incorrect.  The ALJ instead observed that during the vast majority of Plaintiff's numerous physical examinations, Plaintiff did not voice complaints of joint pain.  As previously explained herein, this observation is supported by the record, and accordingly, was reasonable grounds to discount Plaintiff's credibility.

Plaintiff also maintains that the ALJ improperly de-emphasized the effects that calcaneal foot spurs have on her ability to function.  Despite Plaintiff's argument, the ALJ correctly found that objective evidence does not support the severity of her complaints.  The ALJ provided a detailed discussion of the x-ray evidence of Plaintiff's feet. (Tr. 26).  He wrote that March 2010 x-rays of Plaintiff's ankles were normal, aside from what were described as "small" calcaneal spurs. (*Id.*).  Imaging of Plaintiff's right foot was only suggestive of stress fractures involving her second through fourth metatarsal bones and some degenerative changes, and her left foot was normal, with the exception of "small" bilateral calcaneal spurs. (*Id.*).  Based on this evidence, the ALJ properly concluded Plaintiff's allegation that "hundreds" of bone spurs created such pain that she could sit for only thirty minutes to an hour at a time was likely not fully credible. Plaintiff does not point to medical records where physicians substantiated the severity of her complaints related to her calcaneal spurs.

Keating purports that the ALJ failed to factor into his credibility decision her fibromyalgia and how this impairment can exacerbate the pain and soreness associated with her other impairments, affecting her ability to function. Contrary to this allegation, the ALJ's credibility analysis acknowledged Keating's fibromyalgia and other impairments. (Tr. 26). Plaintiff points to no medical evidence to support her argument that fibromyalgia exacerbated her other impairments.

Finally, Keating argues that the ALJ's assessment was faulty because her diagnosis of fibromyalgia warranted a more thorough credibility analysis. However, the undersigned finds that the reasons set forth by the ALJ for discounting Plaintiff's allegations were sufficiently specific and supported by the record. Consequently, remand on this issue is not appropriate.

### C. Plaintiff's hearing upon remand from the Appeals Council

Plaintiff alleges that the ALJ failed to provide a fair and full hearing when she appeared before him for her second administrative hearing. Following remand by the Appeals Council, a second hearing was held before the ALJ on September 15, 2011. Plaintiff was represented by council at this hearing, as well as her prior hearing, which took place on November 25, 2009. (Tr. 33, 46).

The ALJ carries the responsibility for ensuring "that every claimant receives a full and fair hearing." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983))*. Yet, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is only under special circumstances, such as when the claimant is unrepresented by council, that an ALJ has a special,

22

heightened duty to develop the record.  *See Lashley*, 708 F.2d at 1051-52.  Ultimately, it is the claimant's burden to prove that he is disabled and entitled to benefits.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

There is no bright line test for determining when the administrative law judge has failed to fully develop the record.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986).  The court must conduct a case-by-case determination as to whether the ALJ failed to fully develop the record, and therefore denied the claimant of a full and fair hearing. *Id.*

Plaintiff argues that the ALJ did not provide a full or fair review of her case during her second hearing.  Keating asserts that the ALJ failed to ask any questions of her and the transcript of the hearing was confined to less than twelve pages.  In support of her argument that further consideration of her case is needed, Plaintiff cites to *Vaca v. Comm'r of Soc. Sec.*, 1:08-CV-653, 2010 WL 821656 (W.D. Mich. Mar. 4, 2010) in which the court found that the ALJ's fifteen minutes of perfunctory and simplistic questioning of the claimant was insufficient to develop the record.

The facts of this case are quite different from those before the court in *Vaca*.  The *Vaca* court recognized that the ALJ had a heightened duty to question the claimant because he was unrepresented, incapable of presenting an effective case, and unfamiliar with the hearing procedures.  *Id.* at *5-6.   Unlike the claimant in *Vaca*, Keating did not proceed without the benefit of counsel at her hearing, and as a result, the ALJ had no heightened duty to develop the record.  Additionally, Keating had the opportunity for two administrative hearings to present her case, whereas the claimant in *Vaca* appeared before the ALJ on only one occasion.

During the first administrative hearing, the ALJ questioned Keating, and Keating now raises no issue regarding the fairness of the first hearing.  Plaintiff's counsel had the opportunity

to carry out an effective direct examination of Plaintiff during both hearings.  There is no evidence in the record showing that the ALJ limited Keating's counsel from asking questions, calling witnesses, or otherwise introducing evidence relevant to the disability determination. *See Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007).  During her second hearing, Keating had the opportunity to, and did, speak to any additional symptoms and limitations that persisted after her first hearing. (Tr. 38-34).  As a result, it appears that the brevity of Plaintiff's second hearing, and the ALJ's lack of questioning therein, did not create an unfair result.  Accordingly, the ALJ did not violate his duty to develop the record and provide Keating a full and fair hearing.

### D.   The ALJ's compliance with the Appeals Council's remand order

Plaintiff next contends that the ALJ committed error by failing to follow the mandate of the Appeals Council's remand order.  After a request for review of the ALJ's February 9, 2010 decision, the Appeals Council vacated the ALJ's decision, and directed the ALJ to do the following:

1. Evaluate Plaintiff's obesity under SSR 02-01p.
2. Provide further consideration to Plaintiff's residual functional capacity, providing appropriate rationale with specific references to evidence of the record in support of the assessed limitations in accordance with 20 C.F.R. 404.1545 and SSR 96-8p.
3. If warranted by the expanded record, obtain evidence from a VE to clarify the effect of the assessed limitations on the claimant's occupational base.

(Tr. 86).

The Sixth Circuit Court of Appeals has yet to address whether an ALJ's failure to follow an Appeals Council instruction may serve as grounds for reversal, absent other error.  There is disagreement among federal courts regarding this issue.  *See, e.g., Long v. Comm'r of Soc. Sec.*, 2012 WL 2156713, at *8 (S.D. Ohio, June 13, 2012), report and recommendation adopted by 2012 WL 4009597 (S.D. Ohio, Sept. 12, 2012) (court reviewed whether the ALJ complied with

the Appeals Council's directives upon remand); *Salvati v. Astrue*, 2010 WL 546490, at *5 (E.D. Tenn., Feb. 10, 2010) (*citing Warren-Ward v. Comm'r of Soc. Sec.,* No. 1:07-CV-811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008) (*citing* 20 C.F.R. § 404.983) ("[w]hen an ALJ does not comply with a remand order, his decision must be reversed and the case must be remanded to the Commissioner.")); *but see Riddle v. Astrue*, No. 2:06–00004, 2009 WL 804056 (M.D. Tenn. March 25, 2009) (an ALJ's compliance with an Appeals Council's order is an internal agency-level proceeding not within the district court's purview of social security case review which is limited to determining if the Commissioner's findings of facts are supported by substantial evidence and whether the Commissioner applied the correct legal standards.).

For purposes of this analysis, the Court assumes, without deciding, that such error may serve as a ground for reversal. *See Kearney v. Comm'r of Soc. Sec.*, 3:13-CV-021, 2014 WL 497435 (S.D. Ohio Feb. 7, 2014) (court proceeding on the assumption that it could review the ALJ's compliance with the Appeals Council order and found the ALJ's compliance sufficient). Assuming such, the Court is satisfied that the ALJ met the directives of the Appeals Council's remand order.

At the start of his decision, the ALJ specifically acknowledged the Appeals Council's instructions. (Tr. 20). Unlike in his prior opinion (Tr. 77), during his second review of Plaintiff's application, the ALJ found that Plaintiff's obesity constituted a severe impairment. (Tr. 23). Proceeding with his analysis, the ALJ sufficiently discussed Plaintiff's obesity in accordance with SSR 02-01p, finding that it did not seriously impact her ability to walk, nor was there documentation of other physical restrictions secondary to her weight. (Tr. 24). Plaintiff does not challenge the ALJ's decision in this regard.

As directed by the Appeals Council, the ALJ also provided a more detailed explanation and evidence in support of the RFC. (Tr. 25-27). The only issue that Plaintiff raises as to the ALJ's RFC analysis is that it "does not discuss SSR 96-8p period." However, the Appeals Council order merely required the ALJ to comply with the ruling. To do so, the ALJ need not have referenced or recited SSR 96-8p's requirements. In accordance with SSR 96-8p, the ALJ provided a detailed discussion of the evidence, along with relevant citations to the record, and related how the evidence supported Plaintiff's ultimate RFC. (Tr. 25-27). The ALJ's articulation sufficiently complied with the Appeals Council's instructions.

Lastly, Plaintiff argues the ALJ should have obtained testimony from a VE.[3] However, the Appeals Council granted the ALJ the discretion to determine whether VE testimony was necessary in light of an expanded record; the Council did not mandate additional testimony. (Tr. 86). Here, the ALJ's decision not to obtain additional VE testimony appears to have been reasonable. Following the ALJ's first decision rendered in February 2010, any new and relevant medical evidence was limited to x-rays of Plaintiff's feet and a small span of treatment notes from Dr. Singh. The evidence does not demonstrate a significant change in Keating's health. As a result, the ALJ reasonably concluded that the rather limited additional evidence did not alter the RFC assigned to Keating in his first decision or require VE testimony. During the first hearing, a VE identified jobs that Plaintiff could perform given her RFC. Further questioning of a VE as to the available occupational base for this same RFC would have been futile. Plaintiff does not address how or why the additional evidence warranted testimony from a VE. The Court

---

[3] In arguing that the ALJ failed to comply with the Appeals Council order, Plaintiff contends that the ALJ did not mention her credibility in his opinion. However, the Appeals Council order found no fault with the ALJ's credibility analysis. Additionally, as previously addressed herein, the ALJ expressly considered Plaintiff's testimony and provided good reasons to question her credibility. (Tr. 25-26).

also notes that a VE was present at the second administrative hearing on Plaintiff's application, and Plaintiff's counsel did not request to question the VE. (Tr. 33).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh

Kenneth S. McHargh

United States Magistrate Judge

Date:  March 25, 2014.